FILED - MQ
November 29, 2018 9:09 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:   mlc/   Scanned by /

LETTER OF INTENT

UNITED STATES DISTRICT COURT

_____DISTRICT OF_____

AT_____

**2:18-cv-213**
Gordon J. Quist, US District Judge
Timothy P. Greeley, US Magistrate Judge

Plaintiff;

JOHN JAY JOHNSON          v.

1305 6TH STREET

WAKEFIELD MI

      49968

(906) 285-9931

Defendant;

 ASPIRUS CORPORATION

PAUL DAVID

GENERAL COUNCIL ATTORNEY

425 PINE RIDGE BOULEVARD

WAUSAU, WI       54401

(715) 847-2096   (715) 847-2121

------------------------------------------------------------------------------------------

Case No.

 SUIT IN ;  FEDERAL CIVIL COMPLAINT              {REQUEST OPEN HEARING]

(1.) HIPAA VIOLATION   [42 U.S. Code § 1320d–6 ]

A person described in subsection;

 A recent decision by the Connecticut Supreme Court has concluded that people really can sue for HIPAA violations. Though the implications of this conclusion could be quite radical and extend far beyond HIPAA.The Common Law in Privacy and Data Security Cases; [THE PRIVACY TORTS, BREACH OF CONFIDENTUALITY TORT, AND NEGLEGENCE. CAUSING DEFAMATION OF CHARACTOR OF PERSON AND MEDICAL RECORDS.]" The nature of the common law." The common law provides a myriad of causes of action for plaintiffs to bring in lawsuits. Some of the most common ones in privacy cases include the privacy torts, the breach of confidentiality tort, and negligence.

[breach of confidentialty medical][ 42 U.S. Code § 1320d–6 ]

(2.) AMERICAN DISABILITIES ACT of 1990  (42 U.S.C. § 12101)

 Is a civil rights law that prohibits discrimination based on disability. It affords similar protections against discrimination to Americans with disabilities as the Civil Rights Act of 1964.

{Plaintiff/Patient is denied medical services due to Aspirus Corporation's own mis-communication proceedures.} (Although Aspirus had in writing apologized for this aspect, still the communication process is not working and plaintiff is left to increase mental and physical health pain and suffering. {Aspirus Corporation knowing this condition extensively.}

(3.) ABUSE OF POWER AUTHORITY [42 U.S. Code § 12101] {intimidation and deception}

(4.) FRAUDE AND DECEPTION  [U.S. Code › Title 18 › Part I › Chapter 47 › § 1035]

{mis-use of information to deception}

(5.) DEFAMATION OF CHARACTOR  [28 U.S. Code § 4101]

Supervisor of aspirus corporation exposed breach of confidential medical information to relatives and banning from area hospitals to exploit plaintiff to the public as having mental health issues discussed in private supervisors' meeeting at the hospital.}

(6.) NEGLIGENCE  {increase of pre-diagnosed medical conditions, both physically and mentally because of mis-communication and HIPAA violations knowing plaintif was in fact a patient of both the hospital and mental health system in the area.} {plaintiff trusted management in closed meeting with management in confidentialty and the trust was negligently abused and briught to the pubic attention.}

_____/

{REQUEST OPEN HEARING}

( Although it is in acceptional cases, I would ask the federal courts to accept my option to request the help of an attorney. I do understand it has to be extra ordinary circumstances, I am currently in mental health services and have physical medical conditions that are permant. I was advised to ask for help with an appointed attorny since afTer trying all aspects to acquire one, apparently the stigma of admitting disability along with openly expressing I am curently an out patient of the mental health facility, it does promote a stigma and it is then obvious I am not able to finace an attorney. I do understand that to work on my behalf for free is not appealing to a private attorney so I can't hold but only frustration on my part. I also understand I may have to proceed on my own. I."plaintiff", am willing to move forward, but did not find it in any harm to ask for help. Medical condition is something that can not be helped in certain circumstances, and this is one of those times.

1. HIPAA VIOLATION    [42 U.S. Code § 1320d–6 ]

BREACH OF CONFIDENCIALITY OF MEDICAL INFORMATION  [ 42 U.S. Code § 1320d–6 ]

Wrongful disclosure of individually identifiable health information. (See Exhibit A,B,C,D)

2

In the medical context, for example, when a physician, hospital, or other entity has a duty of confidentiality and then breaches that duty, a plaintiff can sue under the breach of confidentiality tort. HIPAA comes in not to provide the cause of action – that's supplied by the common law – but instead to define the standard used by the common law. For breach of confidentiality, courts look to norms, ethical rules, and laws to determine the duties that caregivers owe to patients. HIPAA is a law that establishes duties, and thus serves as a useful source of duties for the common law.

2. {ABUSE OF POWER} ; [FRAUD AND DECEIT ]  [42 U.S. Code § 12101]

3. [FRAUD AND DECEPTION] [U.S. Code › Title 18 › Part I › Chapter 47 › § 1035]

   [False statements relating to health care matters]

(a)Whoever, in any matter involving a health care benefit program, knowingly and willfully—

   (1)falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or

   (2)makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

4. DEFAMATION OF CHARACTOR  [28 U.S. Code § 4101]

Aspirus exposed mental health information to family without consent, also banned plaintiff/patient from local hospitals in the area not only discriminate, but defamation of charactor is very obvious due to living in a small township.

5. NEGLIGENCE  [19 U.S. Code § 1592 - 19 U.S. Code § 1592]

(INCREASE OF PHYSICAL AND MENTAL HEALTH CONDITIONS PRE DIAGNOSED PRIOR TO VIOLATION); ALL PHYSICAL NEUROLOGICAL BACK NERVE SEGURY AND MENTAL HEALTH CONDITIONS ARE ON MEDICAL RECORD PRIOR TO VIOLATION.)

FRAUD AND DECEPTION [U.S. Code › Title 18 › Part I › Chapter 47 › § 1035]

{For fraud and deceit it is usually necessary to prove that the defendant meant to induce action by some particular person or persons in reliance upon a false statement. False statements relating to health care matters.

The general offence of fraud. (It makes no difference if the representation is made to a machine or to a person.)

Section 1 of the Act establishes a new general offence of fraud, which can be committed in

3

three ways:

(FRAUD BY FALSE REPRESENTATION) (FRAUD BY FAILING TO DISCLOSE INFORMATION) (FRAUD BY ABUSE OF POSITION)

(6.) AMERICAN DISABILITIES ACT of 1990   (42 U.S.C. § 12101)

Is a civil rights law that prohibits discrimination based on disability. It affords similar protections against discrimination to Americans with disabilities as the Civil Rights Act of 1964. {Plaintiff/Patient is denied medical services due to Aspirus Corporation's own mis-communication proceedures.} (Although Aspirus had in writing apologized for this aspect, still the communication process is not working and plaintiff is left to increase mental and physical health pain and suffering. {Aspirus Corporation knowing this condition extensively.}

4

[REASONS FOR REQUESTING FEDERAL COURT JURISTICTION]

There are three hospitals involve in this Aspirus Corporation civil law suit. Hurley Wisconson,

Ironwood Michigan, and Wausa Wisconson. Two states. Also HIPAA violation, American

Disability Act violation are federal. Because Aspirus Corperation is regional and numerous

locations all over the state of Michigan and the state of Wisconson. It would be very possible

that people deciding the case conclusion could be biased since so many government entities

like social services, police, and other government state facilities and/or residents of the area

either are connected too, have extensively worked with, and/or are employed with Aspirus

Corporation in some form or fashion. Although these charges are in connection with

corporation in connection with numerous Aspirus hospital facilities, the hospital as a whole,

negligence etc, charges could be mis-construed or mis-communication and the outcome

could indeed become tainted or biased due to the fact that people are very connected in the

communities since the corporation is quite regional. And as Mr. Robert Jackson ( Manager of

Risk & Patient Safety at Aspirus) has expressed to me," that this is a situation that has a

distinction of uniqueness. And the Aspirus attorney Paul David,( Assistant General Counsel,

Aspirus Inc.), has expressed to me that HIPAA is a very serious charge and people at the

hospital can get very nervous and act different than they normally would. (I, plaintiff

understands that negligence does not mean all people involved are bad people, they have

just made some real bad decisions that have caused harm.) (Some do retaliate pre-

meditatively in neglegence, but that is for the courts to decide. None-the -less in fact

neglegence pre-meditated or not. I, plaintiff feel both types have occured through out this

process that has extended for almost a year so far. And because of it, my pain and suffering

and mental health conditions have increased in severity, moreover could very well have

been prevented.

1

I, plaintiff have tried to work very hard through the aspirus system and the mental health system to remedy all that has happened. For example, aspirus first neglegence occured because of a muliple fractured hip plaintiff recieved from a fall from of a building not long ago. In which in the ER at the aspirus hospital the doctor read the x-rays wrong and she sent me home stating nothing was wrong after the nurse on call that night stated she saw the blood pressure maching plaintiff was connected to jump significantly from the jolt of pain in his body,feeling faint, and extreemly nautious. She stated firmly something is wrong with Mr. Johnson. Still, the ER doctor did not listen to the nurse and sent me home. July 14th, 2016. Only the very next morning plaintif had to call 911for an ambulance because after being sent home,I, plaintiff/patient had fallen numerous times throughout that prior evening plus falling backwards into a very hard cast iron bathroom tub and could have killed or seriously injured me. The next morning once the ambulance returned me,plaintiff to the aspirus hospital emergancy room, I got an apology from the aspirus doctor there that morning they mis-read the x-rays and I ended up six months in recovery with a multiple fractured hip. [NEGLEGENCE]...

Prior that incident, I already had damage to my syatic nerve that had been rubbing against my L-5 vertebra for years so as to create an indentation into the bone from rubbing of the syatic nerve for so many years. At the time plaintiff did not know what was the source of extreem pain and falling down unable to walk. So Plaintiff went to the Hurley clinic first and Ironwood hospital ER later begging for help. In which after many weeks of testing, the hospital had expressed plaintiff was or could be a pill seeker and or seeking attention etc. The hospital could not find anything wrong untill plaintiff/patient fell parralysed in extreem pain and barley made it back to the hospital after contimplatining a mercy suicide from the extreem pain. (Now condemned as suicidal) ...Too much to pain to be able to handle can in fact put one

2

to that level of thinking.. It was only after that situation of extreem begging for help, that the

hospital finally found they made a huge mistake. After plaintiff/patient went back to the

hospital after many nights of extreem pain, the hospital finaly found out by taking another

look at the MRI that the the syatic nerve was rubbing against the L-5 vertebra for so many

years, that the bone had obtained an indentation to where the nerve had worn a place in the

bone, thus causing nerve damage. (NEGLEGENCE).

Sent immediatly to surgery in Duluth, Minnesota for surgery called a matrex deisectomy to

where the bone is cut on the inside to make room so the syatic nerve isnt rubbing and

pressing against the bone. The neurosurgeon surgeon did all he could. Although the damage

is permanent, with the right combination of medication, plaintiff/patient has some quality

of life that is somewhat bearable. Without the medicine, it is very difficult and sometimes

impossible to function. (See Exhibit I)

The Aspirus has decided to recently drop the medications for that proceedure and has left

plaintiff to suffer in extreem pain. The Community Mental Health involved in has determined

this is makes it very difficult along with the PTSD, Anxiety Disorder, and ADD, (Attention

Defecit Disorder) etc...all pre-diagnosed. (PLAINTIFF?PATIENT AGREES!!!). But the CMH

seems to be also having a very hard time communicating with aspirus since plaintiff recent in

the last year has had to try and find a new doctor due to the fact plaintiffs' primary physician

spent three months in the hospital and was very close to death and had no choice but had to

retire due to illness. Recently prior to Dr. Miller's retirement, while he was my family doctor,

he sent me," plaintiff" to traveled to Duluth, Minnesota on advice to talk to the surgery

physician who performed the Matrex Desectomy surgery,(Dr. Glazier),Mark Charles Glazier

Neurological surgery. ( Dr. Miller did this to make sure all was in order for the medication and

all was finalized as the correct proceedure of medications by the surgery neurologist who

3

performed the surgery. He said QUOTE" TELL THE DOCTORS THAT WE HAVE SPENT A LONG
TIME GETTING TO THE POINT OF QUALITY OF LIFE FOR YOU...Tell the doctors I said QUOTE,..."IF
IT"S NOT BROKE, DON"T FIX IT"!!!...UNQUOTE !!! (Meaning, don't change what we have
worked so long for to find a solution that works. Aspirus hospital would not accept the
diagnosis of the neurosurgeon. Even with the help of the mental health facilty specialists and
UPHP health insurance staff to try and solve this, plaintiff is banned from the area's hospitals
and with all medical records at hand. Aspirus does not seem to want to hear. Thus stating
plaintiff/paitient has mental health issues towards staff when plaintiff was folowing all
professional advice from former physicians, (Dr. Mark Glazier),(Dr. Jeffery Miller), CMH
mental health counclor,(Ashley Parker), Mental Health.( Dr. Stephanie Burrows of CMH)
mental health professionals, and aspirus professionals.. (Jenna Sharkey) Manager of Quality
& Patient Safety, "(who incidently apologized for all that went bad for me and I just wanted
to express that). She seemed to get it all, but was nt in the position to impliment any of this
apparently. (Robert Jackson), Manager of Risk & Patient Safety at Aspirus, (Alicia Cook),
Social Worker Aspirus. Plaintiff/patient also had written a letter to (CEO Mat Fredrick
Haywood CEO), Aspirus Corporation and voice messages, and now (Attorney Paul David),
Assistant General Council who has now expressed plaintiff to speak only to him, no-one else.
( This is getting very exausting in my current medical health condition)...Nothing seems to
get through to Aspirus Corporation as a whole, and plaintiff suffers every day because of it.
Nuerologist Surgery specialist of 38 years experiance states personally at Duluth Hospital
appointment, QUOTE,"I CAN NOT CUT ANYMORE OF THE L-5 {5th lumber vertebra) BECAUSE
HE HAS THROUGH SURGERY CUT OUT ALL OF THE BONE HE CAN, AND IF HE CUTS ANYMORE OF
 IT, PLAINTIFF WILL NOT ONLY NOT BE ABLE TO WALK, THE BONE WILL NOT HOLD THE BODY AS
IT SHOULD AND PLAINTIFF WOULD BE NOT ABLE TO FUNCTION.

4

---------------------------------------------

Innerbody

www.innerbody.com/anatomy/skeletal/l5-5th-lumbar-vertebra

L5 (5th Lumbar Vertebra) The fifth lumbar vertebra (or the L5 vertebra) is the largest and most inferior of the lumbar vertebrae. As the last of the lumbar vertebrae, the L5 vertebra bears more body weight than any of the other 23 vertebrae that sit atop it in the vertebral column.L4-L5 Treatment

In the vast majority of cases, treatment for any problems that involve the L4-L5 segment will begin with non-operative solutions. Only if the pain is severe, causes disability, and is unresponsive to nonsurgical treatments will surgery be considered.

-----------------------------------------------

(Meaning if left untreated and/or without medical treatment as far as medication for the nerve damage etc.., plaintiff/patient could easily end up without the ability to walk on his own without a wheelchair.) The pain at times is unbearable. Paralization takes place, along with extreem pain and plaintiff can be very limited to at times no movement from the waist down in extreem pain. Aspirus corperation has done just that, cut all medication knowing the condition,,,(NEGLIGENCE IN A DOMINO EFFECT!!!} Not to mention, now HIPAA violation, defamation of charactor etc...This is all very hard for plaintiff to handle and the mental health facility specialists are trying very hard to help plaintiff/paitient to make it through this difficult time with Aspirus not in compliance even after they(aspirus) has specificallly spoke personnaly to the mental health facility. Instead, the aspirus supervisors staff has banned plaintiff from area hospitals as of July, 2018 knowing the finacial status and mental health condition of plaintiff/patient. pre-metitated action and/or very little if no compassion at all for a patient. Very fearful existing experiance. Medical personell are trained in medical condition both in mental and physical health and are easily able to abuse condition since they are in complete understanding of weak points of paitient.

5

11 | 29 | 18

[ DAMAGES ]

---

{REQUEST OPEN HEARING} [ASKING FOR JURY TRIAL]

[REQUESTING APPOINTED COURT MEDIATION WITH DEFENDANT IF COURTS FEEL TO BE APPROPTIATE IN THIS CASE]

{SINCE I,"PLAINTIFF",  HAVE BEEN DIAGNOSED WITH ADD/HD, PTSD, ANXIETY DISORDER AND HAVE BEEN BANNED FROM BOTH MICHIGAN AND WISCONSON ASPIRUS HOSPITALS IN MY AREA I WISH TO EXPRESS I HAVE DONE MY BEST SO ALL IS UNDERSTOOD CORRECTLY IN THESE DOCUMENTS. BUT IF THERE IS A QUESTION ON ANY CONCERN AS TO IT'S VALITITY AND/OR CREDIBILTY, I, "PLAINTIFF WOULD WISH TO BE ABLE TO EXPLAIN IN PERSON SINCE MOT IS IN MEDICAL RECORD AND INTERNET DOCUMENTATION AND DATED." MOREOVER, ALL I HAVE DONE TO TRY TO OBTAIN AN ATTORNEY HAS BEEN VERY DIFFICULT THROUGH THE FACT THAT I AM ON DISABILITY, SEEKING HELP FROM THE MENTAL HEALTH FACILITY IN MICHIGAN AND VERY LIMITED IN FINANCES. AND WITH THAT STIGMA ATTACHED, MOST UNDERSTAND I CAN NOT PAY FOR AN ATTORNEY AND MEDICAL CONDITION CAN NOT BE REVERSED. ALL HAS BEEN DONE THRU SURGERY THAT CAN BE, AND PRE-DIAGNOSED MENTAL HEALTH HAS BE OBVIOUSLY INCREASED DUE TO DEFENDANT'S NEGLEGENCE.

[CHARGES]

(1.) HIPAA VIOLATION {BREACH OF CONFIDENTIALITY TORT} [42 U.S. Code § 1320d–6 ]

(2.) AMERICAN DISABILITIES ACT of 1990 VIOLATION [42 U.S. Code § 12101)

(3.) ABUSE OF POWER AUTHORITY [42 U.S. Code § 12101] {intimidation and deception}

(4.) FRAUDE AND DECEPTION  [U.S. Code › Title 18 › Part I › Chapter 47 › § 1035]

(5.) DEFAMATION OF CHARACTOR  [28 U.S. Code § 4101]

(6.) NEGLIGENCE  {18 U.S. Code § 2255 - Civil remedy for personal injuries}

[DAMAGES]

STATUTARY DAMAGES   $1,000,000.00 [Compensatory and punitive]

AGGRAVATED DAMAGES  $250,000.00

NEGLIGENCE TORT DAMAGES  $250,000.00

Aggravated damages are the special and highly exceptional damages awarded on a defendant by a court, when his/her conduct amounts to tortious conduct subjecting the plaintiff to

1

humiliating and malicious circumstances. Additional damages are also awarded in situations where a plaintiff is subjected to distress, embarrassment, or humiliation. Aggravated damages are basically compensatory in nature and they are awarded for the aggravated damage that is caused to a plaintiff. Aggravated damages are determined on the basis of the intangible injury inflicted on a plaintiff. Intangible injury includes the pain, anguish, grief, humiliation, wounded pride, damaged self-confidence or self-esteem, loss of faith in friends or colleagues, and similar matters that are caused by the conduct of a defendant. When compared to punitive damages aggravated damages require proof of injury. Aggravated damages can be attained as additional compensation if the injured establishes that a breach of contract caused mental distress.

[INCREASE PAIN AND SUFFERING NEGLIGENCE OF ASPIRUS CORPERATION DUE TO PERMANENT PRE-DIAGNOSED PHYSICAL AND MENTAL HEALTH CONDITIONS] [MEDICAL RECORDS WILL PROVIDE CREDIBILITY] (1993 thru 2018...2004 nuero-surgery L 5 Nerve bone surgery. [METRX DESCECTOMY] On SSI and SSA govenment disability since 2002.]

Negligent tort means a tort committed by failure to act as a reasonable person to someone to whom s/he owes a duty, as required by law under the circumstances. Further, negligent torts are not deliberate, and there must be an injury resulting from the breach of the duty.

Emotional distress. Usually linked to more serious accidents, emotional distress damages are meant to compensate a personal injury plaintiff for the psychological impact of an injury -- including fear, anxiety, and sleep loss. Some states consider emotional distress as part of any "pain and suffering" damage that is awarded to a personal injury plaintiff.

Loss of enjoyment. When injuries caused by an accident keep you from enjoying day-to-day pursuits like hobbies, exercise, and other recreational activities, you may be entitled to receive "loss of enjoyment" damages.

Statutory damages refer to standard payments that compensate for injuries, losses, or civil violations. These statutory damages:

Allow plaintiffs to vindicate their rights;

Quicken lawsuits since they don't need as much proof as actual damages; and

Offer both a punitive and compensatory resolution.

-------------------------------------------------------------------

PUNITIVE DAMAGES

Typical breach of confidentiality action. {HIPAA CONFIDENTIALITY CONTRACT.}

The courts and arbitrators, now used to "over pleading" routinely discount such allegations and

2

we normally do not recommend such over pleading to our clients. [HOWEVER]..., " If misrepresentation leading to damages has occurred, fraud is a powerful and effective cause of action, albeit far more complex to plead and prove than most people believe. It allows for additional compensation than one obtains in a typical breach of contract action, allows for punitive damages being possible, and expands the scope of discovery available to plaintiffs so that they may determine far more of the events that transpired that led to the damages."

Punitive damages are damages awarded in a lawsuit as a punishment and example to deter others from malicious, evil or particularly fraudulent acts. Plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. In order to succeed, the plaintiff must prove that the defendant's conduct was malicious, or in reckless disregard of plaintiff's rights.

In instances in which fraud truly occurs, it can form the single largest element of damages awarded to the injured plaintiff. When our clients do sue for fraud and obtain damages, it is common to receive an award of punitive damages many times higher than the contractual damages-and recall, bankruptcy may not be available to void those damages.

Punitive damages, also known as "exemplary damages," are a monetary amount awarded to a plaintiff in a civil lawsuit for the purpose of punishing the defendant, or to deter him from engaging in the same conduct in the future. Punitive damages are award in addition to any compensatory or other damages, increasing the plaintiff's total award. There are rules governing the award of punitive damages. They are most commonly awarded in cases in which the compensatory damages seem to be an inadequate remedy, and because of the defendant's egregious conduct.

Punitive damages, also known as "exemplary damages," are a monetary amount awarded to a plaintiff in a civil lawsuit for the purpose of punishing the defendant, or to deter him from engaging in the same conduct in the future. Punitive damages are award in addition to any compensatory or other damages, increasing the plaintiff's total award. There are rules governing the award of punitive damages. They are most commonly awarded in cases in which the compensatory damages seem to be an inadequate remedy, and because of the defendant's egregious conduct.

Punitive damages are awarded as punishment for the misconduct of the defendant. Punitive damages are awarded to the plaintiff, but the main goal is deterrence of the behavior that brought about the lawsuit. A judge will award punitive damages if he wishes to make an example of the defendant, or if he believes that compensatory damages are not enough to punish the defendant.

Substantially higher awards of punitive damages may be seen in cases in which:

3

The harm done is difficult to put a value on

There are injuries that are difficult to detect, or which are likely to need continued care in the future

The defendant's conduct was extraordinarily offensive. [AMERICAN DISABILITY ACT.] (BANNED FROM 2 STATE HOSPITALS KNOWING OF DISABILIY FINANCIAL LIMIITATIONS, ALSO HIPAA VIOLATION TO DEFAMATION OF CHARACTOR FOLLOWING BANNING.)]

[FURTHER SURGERY IS NOT AN OPTION SINCE NEUROLOGIST HAS EXPLAINED IN PERSON TO PLAINTIFF/PATIENT THAT HE CAN NOT CUT ANYMORE OFF OF THE L5 VERTABRAE] [NO FURTHER PROCEEDURE CAN BE DONE THAT WILL NOT PUT PLAINTFF/PATIENT IN DANGER OF WORSENING MEDICAL CONDITION]

4

11 | 29 | 18

Case 2:18-cv-00213-GJQ-TPG  ECF No. 1 filed 11/29/18  PageID.14  Page 14 of 33

love your neighbor as yourself" (paraphrased).

# Gaming the system

Gaming the system, also called "rules lawyering", is the following of the letter (sometimes referred to as RaW or Rules as Written)—over, or contrary to—the spirit (sometimes referred to as RaI or Rules as Intended) of the law. It is used negatively to describe the act of manipulating the rules to achieve a personal advantage. It may also mean acting in an antisocial, irritating manner while technically staying within the bounds of the rules.

# See also

- *The Spirit of the Laws*, the 1748 political theory treatise by Montesquieu
- Gaming the system
- Positive law & Natural law
- Malicious compliance & Work-to-rule
- Expounding of the Law

# References

1. ^ *a b c* "The New American Bible" Confraternity of Christian Doctrine, Nashville, Tennessee, 37202, 1976 (1970) p.949 (Jeremiah 31: 31-34). **Note:** This bible has interpretations and references as footnotes.

Retrieved from "http://en.wikipedia.org/wiki/Letter_and_spirit_of_the_law"
Categories: Biblical phrases | Christian theology of the Bible | Doctrines and teachings of Jesus | English phrases | Philosophy of law | Christian terms

- This page was last modified on 9 July 2011 at 16:31.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. See Terms of use for details.
  · Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

## EXPLINATION OF EVENTS

(Plaintiff is currently on disabilty and has been on federal government disability for 16
years. ) (Recieved Disability at 42 yrs. of age and at present 58 yrs. of age) No criminal
record, no problems with addiction to drugs or alcohol, no DUI's, and only side effects to
prescription medications have cause problems, but obviously stopped them to prevent
further side effects. All under a certified doctors care. In current mental health care for
nothing I did to myself, no addictions, no alcohol or drug related addiction counciling.
Volunteered to recieve mental health counciling after advised to do so. In other words, as
much in concern as I was of putting myself in the mis-representation of outlook many will
have on being a mental health outgoing patient, I was in more concern of not attending
because of the trauma I endured in the past. I was told by professional medical staff that I
should try mental health services to improve my life, so I accepted that advice and moved
forward as difficult as it appeared it would be.(There is sometimes a stigma when associated
in mental health, (which is very sad as true as that is), none-the-less, if it can help and I was
advised it could, so I chose that path. I thought I would clear that up from the beginning.
It is serious counciling, but nothing in connection with criminal activity or drug and/or alcohol
related addictions or abuse of them.

------------------------------------------------------------

## [PLAINTIFF'S MEDICAL STATUS]

( SSI /SOCIAL SECURITY DISABILITY )(ACTIVE MEDICARE/MEDICADE)(NO DRUG OR ALCOHOL
ADDICTION OR RELATED CRIMINAL OFFENCES AT ANY TIME)..Apparently there appears to be a
stigma in relation to being on disability and/or actively attending a mental health facility. (SO IN
ORDER TO CLEAR THAT STIGMA IF ANY, IN CASE IT MAY BE A QUESTION TO THE CREDABILITY
OF PLAINTIFF) Plaintiff does have a degree in supervisors' management for industrial trade and
certfied marketing both, 3.78 GPA.

------------------------------------------------------------

1

[ASPIRUS CORPORATION CHARGES]

(1.) [HIPAA VIOLATION ); (FEDERAL)

[BREACH OF CONFIDENTIALITY TORT]

[ABUSE OF POWER); ( FRAUD BY ABUSE OF POSITION);

The general offence of fraud.

It makes no difference if the representation is made to a machine or to a person.

Section 1 of the Act establishes a new general offence of fraud, which can be committed in three ways:

(FRAUD BY FALSE REPRESENTATION);

(FRAUD BY FAILING TO DISCLOSE INFORMATION);

( FRAUD BY ABUSE OF POSITION);

( FRAUD AND FALSE STATEMENTS  18 U.S. Code Chapter 47 )

----------------------------------------------------------------------------

HOSPITAL SUPERVISOR'S HAVE DENIED MEDICAL SERVICES TO PLAINTIFF THROUGH BOTH

MICHIGAN AND WISCONSON STATE HOSPITAL'S IN THE IMMEADIATE AREA FOURCING

PLAINTIFF TO SEEK HELP OUT OF TOWN. (Very difficult on a disabilty income and pre-

diagnosed physical medical injury and mental health history.) (Again, nothing that can't be

explained very easily.)

(Knowledge the Aspirus corporation knows and understands the difficulty prior.)

PRIMARY FAMILY DOCTOR IN THE AREA , (DR. JEFFERY MILLER ALMOST DIED 3 TIMES AFTER

BEING IN THE HOSPITAL FOR 3 MONTHS AND HAD TO RETIRE DUE TO DISABILITY AND COULD

NO LONGER WORK EFFECTIVLY.

FOLLOWING FAMILY DOCTORS' RETIRMENT, PLAINTIFF'S UPHP  HEALTH INSURANCE

ASSIGENED A NEW DOCTOR FOR PLAINTIFF AT ASPIRUS, (LISA POKKY) AND PLAINTIFF SET UP

AN APPOINTMENT VIA THE HELP OF THE MENTAL HEALTH FACILITYBECAUSE THE

2

CMH,(COMMUNITY MENTAL HEALTH) EXPRESSED THAT PLAINTIFF COULD NOT GO WITHOUT A FAMILY DOCTOR. IN FACT THE CMH MADE THE APPOINTMENT FOR PLAINTIFF WITH PLAINTIF/PATIENT PRESENT. THEN THREE DAYS BEFORE APOINTMENT TO SEE THE NEW FAMILY DOCTOR, PLAINTIFF RECIEVED A PHONE CALL FROM ASPIRUS STATING THEY WOULD NOT TAKE PLAINTIFF. THIS WAS NOT ONLY A SURPRISED TO PLAINTIFF/PATIENT, BUT ALSO CMH SINCE THEY HELPED IN MAKING THE APPOINTMENT.

ONLY MENTIONED LOOKING FOR A FAMILY DOCTOR, THAT WAS THE MAIN AND COMPLETE REASON FOR MAKING THE APPOINTMENT.

AFTER MANY ATTEMPTS TO SUCCEED IN TRYING TO FIGURE OUT WHY THE DENIEL OF SERVICES AND THROUGH NUMEROUS ATTEMPTS SPEAKING WITH STAFF SUPERVISORS AND MANAGEMENT BECAUSE PLAINTIFF IS ON DISABILITY "(EXPRESSED AMERICAN DISABILITY ACT)", THUS PLAINTIFF WAS BANNED FROM BOTH HOSPITALS BECAUSE OF BEHAVIORAL ISSUES WITH STAFF. (PLAINTIFF/PAITIENT WAS JUST FOLLOWING ADVICE FROM THE ASPIRUS OWN PROFESSIONALS TO PROCEED BY CONTACTING ASPIRUS AND FOLLOWING THEIR OWN PROTOCOL. NOW PLAINTIFF/PAITIENT BEING TOLD THAT IF PLAINTIFF/PATIENT EVEN SHOWED UP, THE OFFICE PERSONEL WAS TO CALL ATHORITIES IMMEADIATLY.

( ROBIN SARRI, "ASPIRUS HOSPITAL EMPLOYEE" AND RELATVE OF PLAINTIFF CALLED PLAINTIFF OUT OF CONCERN ONCE SHE FOUND OUT ABOUT THE BANNING FROM THE AREA HOSPITALS. THEN EXPRESSED TO PLAINTIFF/"PAITENT OF ASPIRUS" TO BE CAREFUL BECAUSE SUPERVISORS' SENT E-MAILS TO ALL THE PERSONNEL IN BOTH WISCONSON AND MICHIGAN AREA HOSPITALS TO CALL AUTHORITIES IF PLAINTIFF EVEN SHOWED UP ON THE PREMISES. ???

ALSO ANOTHER PERSON FROM THE COMMUNITY CALLED PLAINTIFF AND EXPRESSED IN CONCERN IF I, PLAINTIFF, KNEW I WAS BANNED FROM BOTH HOSPITALS AND I REPLIED NO. I DIDN'T EVEN RECIEVE ANY INFORMATION AS TO ANY BANNING AT THAT TIME. {How does

3

people in the community know plaintiff is banned from both area hospitals before plaintiff does???} FOUR DAYS LATER FOLLOWING THAT PHONE CALLS OF BANNING, PLAINTIFF FINALLLY RECIEVED THE LEGAL LETTER OF BANNING OF BOTH HURLEY, WISCONSON HOSPITAL AND IRONWOOD MICHIGAN HOSPITAL.. (See Exhibit F)

PLAINTIFF DID IN FACT PRIOR THE BANNING HAD A CLOSED MEETING WITH SUPERVISORS ON JULY 13TH 2018, WITH MANAGEMENT AND NO SECURITY WAS CALLED, NO POLICE WERE CALLED AT ANY TIME EVER...???

THE ASPIRUS SUPERVISOR LUANN KORPI WHO WAS PRESENT AT THAT MEETING, VIOLATED HIPAA ON JULY 23RD, 2018 FOLLOWING THE CONFIDENTIAL MEETING ON JULY 13TH, 2018 TO RELATIVE WITH MEDICAL INFORMANTION THROUGH CLOSED MEETING. DAYS AFTER THAT CONFIDENTIAL MEETING EXPRESSING PLAINTIFFS CONFIDENTIAL MENTAL HEALTH STATUS ETC... (See exhibit A,B,C,,D,and E). Relative, Robin Sarri is employeed by Aspirus and is her job status is only to greet people who arrive and help them out to know where to go,, Robin Sarri is plaintiff's neices mother".. Although employee of aspirus corleration, she has no office, no desk, and no access to EPIC, (access to a program that holds confidential medical history) also a password is needed to further the program for access. (See Exhibit B). {PLAINTIFF DID NOT WANT FAMILY TO KNOW ANY MENTAL HEALTH OR MEDICAL CONFIDENTIAL INFORMATION !!! NOW MEMBERS OF MY OWN FAMILY HAVE REJECTED ME FROM CONTACT DUE TO CONCERN OF MENTAL HEALTH ISSUES THAT WERE EXTREMELY PUT OUT OF CONTEXT OF WHAT THOSE MENTAL HEALTH ISSUES WERE. ADDED WITH THE CONNECTION OF LITIGATION THAT CANNOT BE HELPED AT THIS POINT BECAUSE OF MEDICAL SERVICES AND DENIAL IN THE AREA , THAT IS ALSO CAUSE FOR FAMILY TO FEAR CONTACT WITH PLAINTIF/RELATIVE FOR CONCERN OF HAVING TO TESTIFY. (See Exhibit D) AND AFTER THE HIPAA VIOLATION WAS REPORTED, THE ASPIRUS SUPERVISOR STAFF USED

4

INTIMIDATION TACTICS TOWARD EMPLOYEES AND EMPLOYEE WAS INTIMIDATED BY

MANAGEMENT "ROBIN SARRI" HAD TO STATE SHE COULDN'T RECALL THE HIPAA INCIDENT

BECAUSE SHE EXPRESSED TO PLAINTIFF IN A PHONE CALL AND TOLD PLAINTIFF/PATIENT

SHE WAS TO SCARED AND INTIMIDATED TO TELL THE TRUTH SO SHE EXPRESSED IN THE HIPAA

ASPIRUS CORPORATION LEGAL MEETING THAT SHE COULDN'T RECALL THE HIPAA VIOLATION

INCIDENT. ASPIEUS SUPERVISOR STAFF USING POWER OF AUTORITY AND DECEPTION

INDUCING ACTIONS, THUS ASPIRUS ACQUITTING THEMSELVES OF THE HIPAA VIOLATION OF

ASPIRUS CORPORATION.

AFTER PLAINTIFF FOUND OUT WEEKS LATER ASPIRUS CLOSED THE HIPPA CASE THROUGH

PHONE CALL TO ASPIRUS CORORATION, I, PLAINTIFF REQUESTED REPORT OF ACQUITTAL

CLOSED CASE DOCUMENTATION, DEFENDANT. (ASPIRUS CORPERATION), DENIED

PLAINTIFF ACCESS. ??? (IF ALL WAS LEAGAL AND CORRECT TO U.S. STANDARDS OF CODE

THEN WHY DENY "THE VIOLATED", PLAINTIFF, RESULTS OF REPORT???) ASPIRUS

CORPERATION STATES IN RECORDED PHONE CALL QUOTE...[" CASE CLOSED"] (see exhibit G)

( Letter to Aspirus corperation asking for closed case documents. ) (Still no response as to

why after signed fedeal express letter. No return of recieving of letter, no response, no

return to sender of letter)???(See Exhibit H).

------------------------------------------------

(4.) The general offence of fraud.

It makes no difference if the representation is made to a machine or to a person.

Section 1 of the Act establishes a new general offence of fraud, which can be committed in
three ways:

(FRAUD BY FALSE REPRESENTATION);

(FRAUD BY FAILING TO DISCLOSE INFORMATION);

( FRAUD BY ABUSE OF POSITION);

5

( FRAUD AND FALSE STATEMENTS 18 U.S. Code Chapter 47 )

-----------------------------------------------------

(1.) [BREACH OF CONFIDENTIALITY TORT]

In the medical context, for example, when a physician, hospital, or other entity has a duty of confidentiality and then breaches that duty, a plaintiff can sue under the breach of confidentiality tort. HIPAA comes in not to provide the cause of action – that's supplied by the common law – but instead to define the standard used by the common law. For breach of confidentiality, courts look to norms, ethical rules, and laws to determine the duties that caregivers owe to patients. HIPAA is a law that establishes duties, and thus serves as a useful source of duties for the common law.

(1.){BREACH OF CONFIDENTIALITY TORT} (See Exhibit A,B,C,D,E)

-----------------------------------------------------------------------

Aspirus clinic supervisor, Luann Korpi used intimidation tactics following Breach of

Confidential medical mental health information on employee following a confidential

meeting on July 13th, 2018. After this closed meeting on July 13th , 2018 with supervisor

(LUANN KORPI) clinic supervisor and (JENNA SHARKEY) Manager of Quality & Patient Safety,

Wausau, Wisconsin Area Hospital & Health Care). {Plaintiff/aspirus patient, DID NOT WANT

FAMILY AND RELATIVES TO KNOW OF BEING A PATIENT AT THE COMMUNITY MENTAL HEALTH

FACILITY AS A PATIENT!!!) A CONFIDENTIAL MEETING WITH HOSPITAL MANAGEMENT SHOULD

MEAN JUST THAT, CONFIDENTIAL. EVEN THOUGH I AM NOT AT THE MENTAL HEALH FACILITY

FOR DRUG ABUSE, ALCOHOL ABUSE, CRIMINAL OFFENSES, ADDICTIONS ETC.. OR THE LIKE, I

AM THERE FOR NOTHING I DID WRONG MYSELF. (I AM THERE FOR WHAT WAS ONLY

DONE TO ME.) IN THE WORDS OF THE MENTAL HEALTH COUNCLER AND DOCTOR, QUOTE,

"JOHN JAY JOHNSON", YOU DID NOTHING WRONG, YOUR HERE BECAUSE OF WHAT OTHER

PEOPLE HAVE DONE TO YOU..UNQUOTE !!!}

-----------------------------------------------------

{A hospital supervisor and a manager of quality and patient safety should hold a high respect for

6

patient confidentiality. And a supervisor releasing information highly important to a patient's trust and/or confidentiality should be held as such. Entrusted to these supervisors should set an example, not commit a breach of confidentiality.}

---------------------------------------------------------

After plaintiff filed a complaint on the HIPAA violation, Luann Korpi used intimidation scare tactics on plaintiff's relative, (Robin Saari) who reported violation to plaintiff/patient" and thus Robin Saari was afraid to tell the truth in the investigation because of it. Employee (Robin Saari) stating to plaintiff she had to say she couldn't recall the HIPAA incident because she was intimidated. (Luann Korpi is Robin Saari's boss.) Aspirus corperation wworked very well together with employee management staff to acquire and acquittal. Im the manner the aspirus corperation handled the violation and allowed intimidation, leaving only one conclusion,,,{ACQUITTAL ,,,CASE CLOSED.)....Even though plaintiff has in writing on dated documents the incidents that occured via internet from aspirus employee, Robin Sarri. (See Eahibits A,B,C,D,and E)

These dated proof written documents via internet are statements that exposed the HIPAA confidentiality medical information that was breached without consent of patient,"Plaintiff". (Exhibit A,B,C,D, and E ).

The legal HIPAA decision meeting was held in Ironwood hospital via Wausau Aspirus Corperation Compliance and Leagal Council conference to discuss the HIPAA violation and was basically arranged to intimidate the employee to deny the truth. (See Exhibit D) Robin Sarri expressed to plaintiff that her only option was to say she couldn't recall. And as one can clearly see from the text messages, (see exhibit A,B,C,D,and E) , that would be impossible to not recall since directly after the violation, Robin Saari confronted her boss personally on the exact matter in anger stating she had no right to expose that information. (See Exhibit A). ( The reason there are two copies there named and dated is so one can see

7

the name and date of who sent them via internet in case anyone tried or tries to delete or

eliminate the evidence..) My, "plaintiffs'mental health issues are very personal and

confidential. I expressed certain aspects of my mental health issues to aspirus

only because of medication purposes. And was very surprised when a supervisor after a

confidential meetinf at the Aspirus hospital would forward that meeting proceed down to

the hospital floor and repeat this information to a family connection of plaintiff's mental

health issues and express all all security changes will be made because of plaintiff/patient

being mentally ill and/or having mental health issues. (See Exhibit B) Especially to an

employee just because I, plaintiff had mentioned Robin Sarri was my nieces' mother at the

meeting held on July 13th, 2018 at the Ironwood aspirus hospital. (At that time in the

confidential meeting on July 13th, 2018 I, plaintiff/patient did not know Luann Korpi was

Robin Saari's boss. I explained at the meeting that Robin was my Niece's mother and she

knows me as Jay Johnson. I also explained at that meeting that I talked to Robin Sarri at 7:30

am when I showed up at Ironwood aspirus hospital a few days earlier for my appointment

there and that Robin greeted me that same morning. (There was a question as to the time I,

plaintiff showed up at the hospital for an appointment, and so Robin Sarris' name was

brought up because I talked to her at 7:30 am the day of the appointmet. (She greeted me at

the hospital entryway. That is how Luann Korpi knew I was called

Jay Johnson by my middle name and Robin Sarri was my nieces mother because I explained

that to Mrs. Korpi and Jenna Sarkey she was in connection to my relatives etc....

(See Exibit B).

( The reason my name is called Jay was because my uncle John was killed while in the U.S

service in an automobile jeep accident, so my grandmother didn't want to hear son's name

John because she was so devistated at that time over her son's death, "(Plaintiff's uncle)";

8

thus my family used my middle name and I was called Jay Johnson ). I had no earthly
idea that Mrs. Korpi would express my health information as she did to include my family
knowing my mental health issues.. It was a complete surprise. And because Robin Saari was
so intimidated that she couldn't express the truth of the HIPAA violation, thus acquittal of the
HIPAA violation and Aspirus Corperation closed out the case on the HIPAA. Plus held strong
of the banning of plaintiff/patient for challenging about the information of confidentiality
etc...

The HIPAA meeting held, appears to have been basically designed to intimidate anyone who
knew of the HIPAA violation and to not want admit to it using Robin Saari as an example.
And after a phone conversation with the aspirus attorney Mr. David, he did mention that
HIPAA is a very serious situation and people can be very nervous in connection with
something as serious as that. I told him I understand, but I can not change what happened.
Also I was concerned as to why plaintiff, who was violated was not asked to be present with
documentation evidence at the aspirus corperation meeting for deciding the
outcome of the violation. Plaintiff was never told of the meeting to decide acquittal was
taking place. The aspirus corperation designed the meeting so acquittal was the only
alternative. (Using plaintiffs' physical and mental health status as a weakness to (defraud.)
(I am in conclusion that because of my mental and physical health staus that the hospital is
trained to understand completly the illness and physical weakness of plaintiff/patient in
assuming that the Aspirus Corporation hoped the issue would disapate due to
plaintiff/patient not being able to keep up with the stress involved with pursuing the
situation.)

And it is very difficult and I'm sure the hospital understands the condition because that is
what they are highly trained in. But with all due respect to the courts, medical is something at

9

times one can not detour from. No matter how sick I ,plaintiff will have to endure. I have no choice in the matter. I have contacted numerous attorneys, advocates through the UPHP health, government services, Department of Justice etc...( and even the FBI with Mr. Mark Hoff and a gentleman named Brad (906) 226-2058 at the same FBI office in which I was advised to do so by the federal office to no avail. (Although Mr.Mark Hoff explained very nicely that at this point they can not help, he did express his apology and thanked me for being nice on the phone. ( I was surprized that anyone would be not nice to the FBI.) It was very intimidating just for me to call, let alone to not be nice.) So I thanked Mr. Hoff and no help there. (The reason I called is because I asked if a federal government court office that if a violation in crime is commited, can that same violater acquitt themselves ? I,"Plaintiff" will not proceed to call randomly because of mental health issues as Aspirus Corporation has in writing expressed I do as such!!! (See Exhibit F).

(I,plaintiff was advised to do so.) Because aspirus may have communication issues, I can not control that. I followed aspiruses and mental health's protocal to the letter and this is where this has taken me. I have tried evreything to get assistant in legal help but have not had much success, so I will have to go the route of litigation as best I can. I can not change my physical surgical medical condition. It is permanent!!! Plaintiff's mental health information was discused at a meeting in confidence held on July 13th, 2018. (PTSD, Anxiety Disorder, ADD etc..} Aspirus knew prior I was working with the mental health and UPHP health insurance program in connection with all of the proceedures with aspirus to bring about a better form of communication so there would be no stigma or mis-communication with doctors etc. and apperently failed.This communication process had been ongoing for months prior to the HIPAA violation. I followed all aspects of protocol from all 3 places,,The mental health, the UPHP, and aspirus very carefully from the start; Now banned from all area hospitals. And

10

being on disability, everyone knows my and physical conditions are very limited. My finances
are very limited. My mental health is at risk due t the aspirus corporations inability to seek
out prior recpords before assuming.

Aspirus is taking advantage of a mental health and physical condition and has made it a living
nightmare for me in hopes that my mental health status will defeat my efforts for
justice..My condition is serious, ( See Exhibit I) [Ful documentation of neurological spine,
syatic nerve, and L5 vertebrae surgey proceedure. Also, 2 years later ending up back into
aspiruses own emergancy hospital for severe pain etc. Grandview hospital is aspirus hospital,
just now a different name and new owners I assume.

Basically, Aspirus has done extreemly well in accomplishing hopes that a mental status and
physical condition will be defeated in the ability for plaintiff/patient to move forward in
litigation and just go away. The only problem with that outlook is that I , plaintiff has no
choice no matter how sick I get both physically and mentally.

The situation is in fact that no-one can pre-determine or pre-meditate and already pre-
existing diagnosed medical and /or mental health issue. And with no available
health facilities in the area, I , plaintiff/patient have no choice but to move forward in
litigation beside of the fact I have followed all medical protocal very accurately with both
the mental health facility and Aspirus Corporation. I should not be punished to have to travel
out of town for medical services on my income and pemanent physical staus of injury.  Even
travel will cause more severe pain, although in an emergency I may have to endure the
increase of pain, it is not good for me because of the nature of the surgery etc....And because
I cannot afford an attorney due to my mental health status and physical spinal injury etc. I am
very cornered as to my imitations. No-one is immune from disabiliy, not even a Judge,
Doctor, or lawyer. (NOT ANYONE )!!! AND ONE SHOULD NOT BE ABUSED IN THIS MANNER

11

JUST BECAUSE OF HEALTH ISSUES THAT ARE NOT THEIR FAULT NO MATTER WHO IN THE PAST

OR PRESENT ABUSES THE SYSTEM. i.PLAINTIFF/PATIENT DID NOT AND NEVER HAVE ABUSED

THE SYSTEM AND SHOULD BE COMPENSATED FOR THE NEGLEGENCE, DEFAMATION OF

CHARACTOR, AND NOT BE HELD ACCOUNTABLE FOR THE MIS-COMMUNICATION OF THE

HOSPITAL. Plus I have done nothing so wrong I should be punished in this manner, it is

making me very sick.

Mr. Robert Jackson did express in a letter that aspirus is very sorry for the communication

mishaps, but it does not seem to effect the outcome. I have done my best to communicate

with everyone involved up to the CEO corporation Mr. Mat Fredrick Haywood, and it seems to

be very difficult because I feel my disability anD mental health status has been used and/or

stigmatized against me in a very disciminatory proceedure.

{ Intent to defraud is the intention to deceive others. ... Intend to defraud can also include an
intention to deceive others, and to induce such other person, in reliance upon such deception,
to assume, create, transfer, alter, or terminate a right.}

_____/

(1.) HIPAA VIOLATION....ABUSE OF POWER ( FEDERAL)( FRAUD BY ABUSE OF POSITION)

SLANDER .(Very damaging in an area such as the small towns here, word spreads very fast.)

(See exhibit C) (DEFAMATION)

SO KNOW ASPIRUS CORPERATION SENT ANOTHER EMPLOYEE, ( ROBERT JACKSON ) (MANAGER

OF RISK AND PATIENT SAFETY) TO GET INVOLVED. WHICH WAS FINE WITH ME, JUST MAKING

ME MORE SICK TO HAVE TO DEAL WITH MORE DIFFICULTY IN MIS-COMMUNICATION

PROCEEDURE. AND AFTER NUMEROUS CONVERSATIONS I ASKED HIM TO FIND OUT WHY ALL

THE PERSONELL WERE SENT E-MAILS TO HAVE SECURITY CALLED ON ME EVEN IF I SHOWED UP

AT THE HOSPITALS. (I'm assuming to create an arrest record to now validate the banning

process after the fact.) ROBIN SARRI CALLED ME AND TOLD ME TO BE CAREFUL BECAUSE THEY

12

HAVE DONE THIS. ROBIN SAARI ALSO SENT ME A TEXT MESSAGE STATING THE ASPIRUS
HOSPITAL HAS NOW CALLED i.d. SO FYI, DON'T CALL ASPIRUS. (I,PLAINTIFF DOES NOT KNOW
WHAT i.d. is} (See Exhibit E)

ALSO MR. ROBERT JACKSON SAID HE WOULD GET BACK TO ME ON THE THREAT OF HAVING
SECURITY CALLED ON ME IF I JUST SHOWED UP AT EITHER HOSPITALS, BUT NEVER DID. AND
NOW ALL OF A SUDDEN HE WAS ADVISED NOT TO TALK TO ME ANYMORE, I WAS JUST TO
SPEAK TO THE ASPIRUS CORPORATE ATTORNEY MR. PAUL DAVID. WHEN I THEN CALLED MR.
PAUL DAVID, HE EXPRESSED BECAUSE I MENTIONED LITIGATION, HE NOW HAD REQUESTED
THAT I, "PLAINTIFF" ONLY SPEAK TO ASPIRUS CORPORATE ATTORNEYS. I EXPRESSED THAT AT
THE VERY FIRST MEETING WAY BACK ON JULY 13TH, 2018 EXPRESSING THE POSSABILITY OF
LITIGATION TO BOTH LUANN KORPI AND JENNA SHARKEY THROUGH THE VIOLATION OF
AMERICAN DISABILIY ACT AND DEFAMATION ETC...NOW AT THE END OF AUGUST 2018 IT
IS BEING ACKNOWLEGED TO THE ATTORNEY FOR THE FIRST TIME?? THE ATTORNEY THEN
EXPRESSED THAT THIS IS THE FIRST HE HAS HEARD OF IT AT THE END OF AUGUST...I EXPRESSED
NUMEROUS TIMES THROUGHOUT TALKING WITH MR. ROBERT JACKSON WEEKS BEFORE I
INTENDED TO SOLVE THIS THROUGH LITIGATION BECAUSE I WAS REPEATEDLY BEING TOLD THE
BANNING WAS NOT GOING TO CHANGE. MR. JACKSON WAS REPORTING BACK TO ASPIRUS
CORPORATION AS HE HAD EXPRESSED MANY TIMES TO ME THAT WAS WHAT HE WAS DOING.
SO I AM ASSUMING THE CORPERATION KNEW VERY EXPLICITLY THE TERM LITIGATION CAME UP
FREQUENTLY WEEKS PRIOR AT THE VERY FIRST MEETING ON JULY13TH, 2018. ANY BROUGHT
UP

WITH MR. JACKSON ALSO NUMEROUS TIMES.. THAT IS WHY SO MANY WERE GETTING
INVOLVED FROM TWO DIFFERENT STATES AND THE CORPORATE OFFICE , CORPERATE
COMPLIANCE AND LEGAL COUNCIL OF WAUSAU. ACTUALLY MR. ROBERT JACKSON IS THE ONE
WHO GAVE ME THEIR NUMBER TO CALL WAUSAU COMPLIANCE AND LEAGAL COUNCIL ON JULY

13

30TH, 2018 AFTER I MENTIONED LITIGATION. (???) THIS WAS NOW THE END OF AUGUST, 2018. I AM ALSO ASSUMING THAT BECAUSE PRIOR ON AUGUST 23RD. I HAD ASKED MR. JACKSON AS TO WHY HE WOULD ALLLOW ROBIN SAARI AND LUAN KORPI IN THE SAME ROOM TO DECIDE THE OUTCOME OF THE HIPAA, HE EXPRESSED TO ME HE WASN'T INFORMED THAT LUANN KORPI, (The HIPAA violation supervisor) was (Robin Sarri's boss).(The relative who reported the HIPAA violation to me,(Plaintiff).???

THIS PHONE CONVERSATION TOOK PLACE ON AUGUST 23RD, 2018, AND MR. ROBERT JACKSON WAS INVOLVED WEEKS PRIOR AUGUST 23RD. WHY WOULD "JENNA SHARKEY "SO INVOLVED WITH ROBERT JACKSON BOTH WORKING CLOSELY TOGETHER AS PATIENT SAFTEY MANAGERS OMMIT THIS INFORMATION. JENNA SHARKEY SHOULD HAVE MENTIONED IT TO MR. ROBERT JACKSON FOR THE SIMPLE REASON THAT THIS PROCESS OF ALLOW LUANN KORPI AND ROBIN SAARI IN A MEETING TOGETHER ABOUT THE HIPAA VIOLATIN DETERMINATION WOULD CREATE INTIMIDATION SINCE LUANN KORPI IS ROBIN SARRIS' BOSS. BOTH JENNA SHARKEY AND ROBERT JACKSON ARE SUPPOSE TO BE TRAINED ON PROTECTING PEOPLE FROM ITIMIDATION PRACTICES. PATIENT AND EMPLOYEE SAFETY IS THEIR COMPANY TITLED JOB !!! .{OF COURSE ROBIN SAARI WOULD FEEL INTIMIDATED AS SHE SO EVIDENTLY WAS TO HAVE TO SAY SHE COULDN'T RECALL ANY HIPAA VIOLATION ANYMORE.}. ROBIN SAARI EXPRESSED TO ME THAT LUANN KORPI EVEN ASKED FOR HER PHONE TO SEE IF AND WHAT SHE WAS TEXTING ME,"PLAINTIFF". (The text messages are facebook, not cell phone). I,"PLAINTIFF/PATIENT", DID NOT MENTION FACEBOOK, I ONLY MENTIONED I HAVE TEXT MESSAGES OF THE HIPAA VIOLATION. ( I HAVE TO ASSUME THE SUPERVISOR LUANN KORPI WAS IN INTENTION TO TRY AND DELETE THE MESSAGES) OTHERWISE WHY WOULD SHE ASK FOR ROBIN SARRI'S PHONE WHILE AT THE ASPIRUS HOSPITAL AT WORK? AS YOU CAN SEE CLEARLY IN EXIBIT (A and C), THE TEXT MESSAGES SENT ARE NOT A SIGN OF BEING AFRAID OF

14

PLAINTIF/RELATIVE. THEY ARE IN FACT INVITING PLAINTIFF OVER ANYTIME. (See Exhibit A

and C). (THAT IS NO LONGER THE CASE). NOW I AM NOT WELCOME AT ANTIME ANYWHERE

WITH EITHER MY NIECE OR HER MOTHER. AND THE WAY ASPIRUS CORPORATION PROCEEDED

IN THIS MATTER, I CAN NOT ACTUALLY BLAME MY RELATIVES AND THOSE ASSOCIATED WITH

THEM TO BE AVOIDING ME AT ALL COSTS. LITIGATION IS A VERY INTIMIDATING PROCESS FOR

ANYONE NOT TO MENTION THOSE NOT IN UNDERSTANDING OF THE PROCESS. THE ASPIRUS

HAS INDUCED QUITE THE INTIMIDATION FACTOR HERE. THEY HAVE ABUSED THEIR POWER OF

AUTHORITY IN A VERY PHSYCOCOLOGICAL AND INTIMIDATING WAY.

---

[ LIBEL VIOLATION FROM FALSE INFORMATION OF INTERNAL HIPPA INVESTIGATION IN WHICH

INTIMIDATION OF EMPOYEES WAS USED, OMMITING OF INFORMATION THAT CAUSED

MIS-LEADING AND FALSE INTERPRETATION OF WHAT REALLY HAPPENED. ALSO USING

PLAINTIFFS' MENTAL HEALTH STATUS AS A STIGMA TO DEFAME PLAINTIFF AND ACQUITT

THEMSELVES OF THE HIPAA VIOLATION. ]

---

[The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.]

[The Psychology of Defamation Victims/Character...Defamation of character is a term that is used to describe when a false statement is written or spoken about an individual with the intent of harming their reputation.]

(a) Offense

A person who knowingly and in violation of this part;

Discloses individually identifiable health information to another person,

[For purposes of the previous sentence, a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in

15

violation of this part if the information is maintained by a covered entity (as defined in the HIPAA privacy regulation described in section 1320d–9 (b)(3) of this title) and the individual obtained or disclosed such information without authorization.]

_____/

(2.) AMERICAN DISABILITY ACT/ FRAUD AND DECEIT (FEDERAL)

REFUSED MEDICAL SERVICES AT BOTH THE HURLEY WISCONSON AND IRONWOOD MICHIGAN CLINICS DUE TO DISABILITY AND DEFAMATION PRACTICES.   A tort fraud of succsessful deception. Aspirus corp. internal investigation staff relied on these inaccurate statements and banned plaintiff from two hospitals. { FRAUDULANT CONCEALMENT AND FRAUDULANT MISREPRESENTATION. THUS WHERE FALSE REPRESENTATIONS ARE MADE TO INDUCE ANOTHER TO ACT CAUSING THE DENIAL OF MEDICAL SERVICES AND THUS BANNING PLAINTIFF FROM MEDICAL SERVICES. (See exhibit D,F, and G)

_____/

(3.) (ABUSE OF POWER)    (A HOSPITAL SUPERVISOR AT THE IRONWOOD HOSPITAL USING POWER OF AUTORITY AND INTIMIDATION TO DECIEVE INTERNAL INVESTIGATION STAFF AND CORPERATION USING THIS INFORMATION TO ACQUITTAL OF HIPAA VIOLATION THEMSELVES.) THUS BANNING PLAINTIFF FROM NOT ONLY ONE HOSPITAL, BUT TWO. THE ONLY TWO IN THE AREA.  PLAINTIFF MENTIONED THE ACTION OF LITIGATION IF THE PROBLEM WAS NOT SOLVED AND THE SUPERVISOR RETALIATED BY BANNING PLANTIFF OUT OF THE AREAS HOSPITALS KNOWING OF THE PRIOR DISABILITY CONDITIONS AND FINANCIAL STAUS OF PLAINTIFF. ALL MEDICAL STATUS WAS MENTIONED AT THE CLOSED MEETING JULY 13TH 2018 PRIOR THE BANNING FROM THE HOSPITALS. (see exhibit F )

(Defaming my name as the reason the whole entire secrity system is being changed because of my mental health issues to relatives family and friends) { BREACH OF CONFIDENTIALITY FROM A SUPERVISOR OF A HOSPITAL}

(2.) AMERICAN DISABILITY ACT VIOLATION;

Physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

Discrimination against individuals with disabilities persists in such critical areas as health services. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion.Fraud Law and Legal Definition;

16

Fraud is generally defined in the law as an intentional misrepresentation of material existing fact made by one person to another with knowledge of its falsity and for the purpose of inducing the other person to act, and upon which the other person relies with resulting injury or damage. Fraud may also be made by an omission or purposeful failure to state material facts, which nondisclosure makes other statements misleading.

To constitute fraud, a misrepresentation or omission must also relate to an 'existing fact', not a promise to do something in the future, unless the person who made the promise did so without any present intent to perform it or with a positive intent not to perform it. Promises to do something in the future or a mere expression of opinion cannot be the basis of a claim of fraud unless the person stating the opinion has exclusive or superior knowledge of existing facts which are inconsistent with such opinion. The false statement or omission must be material, meaning that it was significant to the decision to be made.

Sometimes, it must be shown that the plaintiff's reliance was justifiable, and that upon reasonable inquiry would not have discovered the truth of the matter. For injury or damage to be the result of fraud, it must be shown that, except for the fraud, the injury or damage would not have occurred.

To constitute fraud the misrepresentation or omission must be made knowingly and intentionally, not as a result of mistake or accident, or in negligent disregard of its truth or falsity. Also, the plaintiff must prove that the defendant intended for the plaintiff to rely upon the misrepresentation and/or omission; that the plaintiff did in fact rely upon the misrepresentation and/or omission; and that the plaintiff suffered injury or damage as a result of the fraud. Damages may include punitive damages as a punishment or public example due to the malicious nature of the fraud.

Plaintiff is denied services to local hospitals, {defendant;(ASPIRUS CORPORATION)}, knowing plaintiff is on disability and cannot afford attorney to represent for legal services has banned plaintiff/patient from access to services stating mental health issues. In discrimination in abuse of authority. Aspirus used plaintiff's health condition in manipulation wprsening the medical condition. (Knowing plaintiff is up against all odds here. [Financially, physically, and mentally.] Although apologies were expressed in writing to plaintiff from aspirus corporation for bad communications on their part does not help or cure a medical condition that is long term and/or permanent. Medical records state permanent physical and mental disabilty and aspirus knows this extensively through all the meetings and phone calls to management entrusting complete trust for confidentiality for months now, plaintiff never immagined hospital staff would violate this trust and move to use this mental heath condition to discriminate and defamamation of charactor. Taking advantage of a medical and mental health condition in breach of confidentiality when your trained on what the medical weaknesses and use them to your advantage to abuse the vulnerably disabled is not only very discriminatory, it is illegal and

17

cruel. Truly neglegence is apparent. This breach of confidentiality should never have happened.

Department of Justice has expressed I may move forward in a legal manner since they have not the ressources to help. {Plaintiff has been communicating with Aspirus corporation and staff for months and even with the help of the mental facility in which plaintiff/patient has volenteered to attend and follow their advice in continued hospital care only now aspirus corporation accused plaintiff of having behavioral issues with staff following aspirus's own advice to proceed in communication trying to solve any mis-communicatios an/or concerns. I,"plaintif/patient had expressed my physical and mental healt status in confidence, only to have it thrown back in my face and used against me now banned from medical facilities in the area. Fourcing me to have to travel out of the area for medical assitance because of the mis-communication processes of Aspirus corporation. Plaintiff followed al protocal and has now been discriminated against and aspirus corporation has expressed in writing that they are sorry about the mis-communication. Still no results and still discriminated against plaintiff. (see exhibit A,B,C,D,E, and F)

_____/

(3.) DEFAMATION OF CHARACTER/ PSYCHOLOGY OF DEFAMATION VICTIMS/CHARACTER

[The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.]

[The Psychology of Defamation Victims/Character...Defamation of character is a term that is used to describe when a false statement is written or spoken about an individual with the intent of harming their reputation.]

(a) Offense

A person who knowingly and in violation of this part;

Discloses individually identifiable health information to another person,

[For purposes of the previous sentence, a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part if the information is maintained by a covered entity (as defined in the HIPAA privacy regulation described in section 1320d–9 (b)(3) of this title) and the individual obtained or disclosed such information without authorization.]

Defamation of character is a term that is used to describe when a false statement is written or spoken about an individual with the intent of harming their reputation.   (see exhibit A,B,C,D,and E )

18

Written By J. Hirby and Fact Checked by The Law Dictionary Staff;

Defamation of character is a term that is used to describe when a false statement is written or spoken about an individual with the intent of harming their reputation. Unfortunately, defamation of character claims are extremely difficult to prove in the court of law despite the fact that they are illegal. [HOWEVER, ANY LAWYER WILL TELL YOU THAT AS LONG AS THE TRUTH IS ON YOUR SIDE, ANYTHING IS POSSIBLE.]

_____/

(4.) NEGLIGENCE.; ( INCREASE OF PHYSICAL AND MENTAL HEALTH CONDITIONS PRE DIAGNOSED PRIOR TO VIOLATION); ALL PHYSICAL NEUROLOGICAL BACK NERVE SEGURY AND MENTAL HEALTH CONDITIONS ARE ON MEDICAL RECORD PRIOR TO VIOLATION; SLANDER AND LIBEL .)

( 2004 MATREX DESECTOMY ) (NUEROLOGICAL SYATIC NERVE SURGERY) (See Exhibit I)

(1996 FORWARD TO DATE...PTSD, ANXIETY DISORDER, ADD/HD) ( OTHER DIAGNOSES CONFIDENTIAL BUT WILLING TO OPENLY DISCUSS WITH MENTAL HEALTH COUNSELOR PRESENT OR VIA PHONE)

(4.)NEGLIGENCE; SLANDER AND LIBEL

Negligence for privacy and data security violations. Typically, people think of negligence in terms of accidents. It applies whenever a person owes other individuals a reasonable duty of care and that person breaches that duty of care and causes injury to an individual.

( Even though HIPAA lacks a private right of action, plaintiffs can still use HIPAA to establish a duty or standard of care under state common law. That means that the requirements of HIPAA can readily become the basis of a lawsuit, as there are many common law causes of action (such as negligence) that can be used to bring lawsuits for privacy and data security incidents.) (see exhibit A,B,C, D,E,F,G,H,and I)

John Jay John
11 | 29 | 18